The Illinois Assembly 208 Committee is now in session. The Honorable Justice Raymond W. Mitchell is beside you. Okay, please be seated. Good morning, folks. Our first case this morning, Acer America v. SmithAmundsen. If counsel who's going to argue for the appellant and the appellee, if you could just step up briefly to our left turn. Counsel to the appellee as well. And if you could identify yourself. Good morning, Your Honor. My name is Daniel Conacec, and I represent the 23rd Corporation, the appellant in this case. Good morning, Your Honor. Michelle Bloom on behalf of appellee SmithAmundsen. Great. Okay. Well, we've allocated 20 minutes per side with an additional 5 minutes for rebuttal. And as I know we indicate on our website that we've read the briefs and are familiar with the authority cited therein. Undoubtedly, we will interrupt you with questions, but we're in no way trying to be rude. We're just trying to make the most of our time together. So with that, you can have a seat, Ms. Bloom, and Mr. Conacec, whenever you're ready. Again, may it please the Court, my name is Daniel Conacec, and I represent the appellant, Acer Corporation, in this case, counsel. Your Honors, this case is, really the crux of it is, is Illinois has an unusual statute of limitation when it comes to brokers. I think out of the 50 states, this may be the only one in my research where it says that the statute of limitation begins to run as it relates to a broker malpractice case on the date that the insurance coverage is denied. Whereas, in California and other states, is the date that the statute of limitation begins to run is on the date of actual injury. In this case, it made a huge difference to Acer, because the case brought by Acer, where Smith Amundson brought the case, was filed in Illinois. In Illinois, under a conflict of laws analysis, they had to apply the statute of limitation, not of California, but of Illinois. Under that analysis, Judge Sherlock and ultimately this Court held, despite all the efforts by Smith Amundson to overcome the statute of limitation, that the case that was filed on behalf of Acer was untimely, because the Euler-Ermes had denied coverage. This Court found as early as June 4, 2013, and Acer had not filed its complaint until May 26, 2016. Acer contends, and we're here now, had the case been filed not in Illinois, but had been filed in California, that the analysis would have been much different. Much different, because under California law, under Section 339, the statute of limitation did not begin to run until, in this case, because it was an indemnity policy, and under the holding in Leterer, and under the holding in Williams, the statute of limitation did not begin to run until actual injury, which could not occur under those two cases, until that indemnity issue had been resolved. What do you make of this trilogy of cases that I read in the predawn hours this morning, in anticipation of your arrival, and it's Budd, Jordache, and Third Eye, or Three Eye. It seemed to me that those cases would suggest that we look to when the party first sustains damage. And in this case, your friends on the other side say, well, that was when they started paying attention to what their likelihood of success might be. Yes. Justice, that was the argument that the trial court here, Judge Esrick, concluded his opinion on, is that very argument that there were fees paid to Wample for that analysis, and therefore, he concluded under the trilogy of cases that you've cited, or discussed, or read this morning early in the hours, that based on those three cases, that the statute began to run upon payment of those fees to Wample. And so the analysis that I've done is, I've gone and I've looked, so Budd and the Jordache case, the analysis, if you recall, was under 640, Section 640, Section 6 of the, no, Section 1 of the California Code of Civil Procedure, whereas, and I'm going to get to even more of a distinction, whereas the issue in this case, had it been filed in California, would have been under Section 339 as it relates to a broker. Jordache does a very good analysis, Justice Mitchell, on the history, not only the history of the laws that relates to accrual, but also the legislative history, and why, in Jordache, the legislature changed wording in the statute, where it said, originally, the legislator wanted sufficient injury, and if you recall, in Jordache, they said, no, then they changed it to actual injury. And so in the context of a legal malpractice case, which those cases, the Budd and the Jordache case we're looking at, under Section 3391, they said, because you paid an attorney fees in order to mitigate or look into a problem, that constitutes actual injury under Section 640. I might have the numbers mixed up, but you'll see in there. Okay. So if we take it from there, those two cases were decided, Jordache, what was it, 1998 was Jordache? Okay. And then let me talk about the third one, because it's important. In the Third Eye case, the Third Eye case was not, and it's very important, it was not a statute of limitations case. Third Eye, Judge, the only issue to be decided in Third Eye was when the, whether or not fees were a recoverable element in the case in Third Eye. So if you go look at Third Eye, and the analysis that the appellate court did in there was whether the damages that the plaintiff was claiming were recoverable. And in so doing, the court said, let's look at when the issue occurred. And in Third Eye, if we remember, we had the ban that had been sued. So we have a member of the ban suing the ban. The ban says we need coverage. And they went to the coverage issue, and they said that particular policy may not have covered the claim made by the ban member because it had to do with the Lanham Act. So what they did is they made the request for coverage, the coverage was initially denied, the ban ended up defending itself, paid out-of-pocket fees to defend because it would have been a CGL policy versus an indemnity policy, which is what we have here. So ACER would have never been reimbursed for fees. In the Third Eye case, they would have been, right? So under a CGL, they would have provided defense and indemnity. So the court said under those circumstances that the fees would have been recoverable as part of a policy that was never issued. So when they sued, if you recall in that case, the Third Eye, they sued and ultimately settled. And then they went after the broker, and the broker said, wait a minute, they did not allow them to recoup these fees. And to stop you for just a second, because is the test anything other than actual injury? Actual injury is the test, is it not? It is, but so if you go back to Letterer, Justice, and it is. And if you go back to Letterer, they do a perfect analysis, and that's why that case, after I was going to go through the three in which I have now judged, the timing is so important, because Letterer discusses, remember, it discusses both the Jordache case, and it looks at it, and it says, and the Apple Valley case that was cited by counsel. And the timing was important in Letterer, because both the defense in the Letterer case said, well, wait a minute, you incurred fees because you were looking into coverage, you knew that you were injured because the $1.5 million policy should have been 5 million, and you knew that the injury to the son that was injured in a motorcycle accident that was catastrophic, and that the 1.5 wouldn't be covered, and you knew right away it's not 5 million, it's 1.5. So in that case, what the Letterer analysis said is we have to look at to when, and this answers the question that you've asked me, when does the cause of action accrue? And remember, under California law, when it relates to uninsured coverage, the court in Letterer said that action does not accrue until that underinsured is decided. No, it does not. I mean, that's not, I don't think that's the law. That is a part of the damages, certainly. When you actually get less coverage than you bought, or you thought you bought, that is a damage. But I did not see any of these cases saying that is the only damage you can possibly recover in any situation. Yes, in some of the situations, that was the only damages. But tell me the case that says those are the only damages that are ever recoverable. No, I guess, I'm not saying that the attorney's fees aren't recoverable. What I'm saying is you have to look at the timing when you concede to recover, and Letterer is the only court in California that is instructive on that issue. Again, the other two cases that they rely on, they were not statute of limitations cases. I understand, but if something is a damage, that answers the statute of limitations question as well. Is it a recoverable damage? Okay, when did it accrue? Okay, that's when the statute begins to run. And that's the important part, because Letterer looked at that exact analysis, and it said until that uninsured, until the uninsured motorist coverage was decided, there were no damages that it accrued. That's exactly what Letterer holds. Even though, Justice, that the attorney had been involved in looking into and investigating coverage, the court said because of the unique analysis of underinsurance under California law, that there could have been nothing done until that underinsured motorist case is decided. That's exactly, and Williams stands for the same proposition. Remember, Williams, the fellow was burned, I mean, severely burned, and there was no work comp coverage, and the defendant argued in that case, Justice, that it was an inescapable conclusion that the failure to procure insurance for work comp, at that point in time, the plaintiff knew they were injured and should have filed, and the court said no, once again, because you needed to get to the ultimate conclusion under California law. When did it accrue in terms of an underinsured or uninsured situation? Both Williams and Letterer says it doesn't until it's decided. Are you, I just want to make sure I understand, are you suggesting that the analysis is different in a suit against a broker than it is generally for a statute of limitations in California, that there's some special rule that applies to broker cases? Absolutely, and that's the point, because you cannot read Williams and you cannot read Letterer without reaching the conclusion that the underlying insurance issue had to be decided first, which is exactly what's at issue here. It was an indemnity policy, and we cited the case, Armstrong, under the California law, which follows the outboard marine case here in Illinois, that an indemnity, we know until the underlying liability is resolved, there is no action for indemnity, period. So, Justice, I am saying that, that when you read these cases, in California they said, in fact the Supreme Court said, in Jordache itself, that each case is unique. It has to be decided on its own facts, and the underlying factual premise in Letterer and Williams, the only two cases regarding broker malpractice that have been cited to this court for the statute of limitation proposition by us, are unique in that both cases said you have to wait until the underlying insurance issue is decided. And it's the exact same here. I guess, and maybe I'm saying it far simpler than you, but there are damages, big D damages. The big D damages are when the underlying case is decided and you don't get the coverage you thought you bought, there's your big D damages. Right. But I do not read those cases as saying there can't be little d damages along the way to that, which is what they're arguing here. They agree with you the big D damages hadn't occurred until later. But the little d damages, what is the case that said those little d damages, the attorney's fees you accrue to try to mitigate the problem that your broker left you with, which is what they're saying happened here. What says those are not damages? Letterer addresses that very issue. In paragraphs 526 through 528 of the Cal App Reporter. Because those are the very arguments that were raised. Remember in Letterer, the attorney that was hired by the plaintiff had done some initial investigations into whether or not there would be coverage and how much. And the court looked at that and said until, one of the things, until that underinsured is resolved, that's it. Whether, Your Honor, they didn't categorize it as big D, little d. They said period, in order for that cause of action to accrue, the underlying case in this unique circumstance had to have been resolved. But Justice, can I also point, and if you go to the same paragraph, and they address this at paragraph 527 of the Cal App Reporter. They say, and this is the court, not me, I'm not making this up. They said, moreover, the plaintiff's second amended complaint did not request attorney's fees or investigation costs as a recoverable damage. So addressing the very argument that you, it's not an argument, it's a point you're making, and I understand that. But Judge, it was the argument of the defendant in Letterer. Exactly what you just said. And the appellate court said, we're going to look to the complaint, and that's going to tell us how we're going to analyze this. In so doing, they said, not even the complaint is seeking those, what you've just called the little d as damages. Now, ironically, or maybe I'm using the wrong word, that's the exact same thing here. When Smith Amundson filed that complaint, the second amended complaint that this court addressed, a different panel, I think. They did not seek these damages. Yes. I noticed that. Yes. Justice, not only did they not seek, and if my memory says it's right, it was either paragraph 37 or 39. I'm mixing up the two in that appellate court opinion, the rule 23. They specifically addressed the fact that the plaintiffs in that instance were Smith Amundson's suit, did not seek damages for the attorney's fees. In fact, they put in a paragraph within that second amended complaint that said, we are not seeking. So the end of the final analysis, not only under the Lederer case, but what was filed in the court, in the underlying case, did not seek the fees, the little d or the big d. And I think that's telling. I can answer more questions, but I think, you know, and we really, when we narrow it down, you have to look at what the underlying case was doing. In the underlying case here, Acer versus Euler would have sought indemnity, and you cannot have indemnity until you have that final conclusion. And I don't know how much time I have left, but I'm going to anticipate one of the arguments, because they're going to cite to you that Armstrong case and the California case that the court did something unusual, because the policy was actually a CGL policy at issue in the Armstrong case. So the court could decide, and it did decide, we're going to look at it and since we're here, those are almost the exact words of the court, not mine, since we're here already deciding it, we can decide the indemnity issue on a contingent basis. In other words, that we won't reach a conclusion as to whether or not you have to pay money, but we can reach a conclusion as to whether or not Armstrong should be covered under the indemnity policy. But in the analysis, if you read the Armstrong case, it's very long, but the pages that address the issue that I'm discussing are, you know, only about four pages. Within that analysis, the court said, because we're already looking at the CGL aspect of it, we can throw in the indemnity portion, but it does not hold or change the rules that until there is liability and judgment, the underlying case, any indemnity action is premature. It's not right. So for all those reasons, and I understand things get complicated for lawyers, but in this case, the case should have been filed in California, but it's not. This analysis would have been addressed by the appellate court or the trial court, whatever the circumstance may have been, and it would have been the 339, Section 1 analysis that we've just discussed. I appreciate your time. I can answer more questions. Not for me. Thank you, Mr. Chairman. Ms. Bloom, whenever you're ready. May it please the Court. Smith-Amundson was properly granted summary judgment, because the underlying case was clearly time-barred by the California statute of limitations. The undisputed facts show that ACER had long discovered its broker, Aon's, failure to obtain coverage, and that ACER was damaged because it first paid a bill for its coverage counsel due to the denial of coverage in 2011, and because it suffered an impaired settlement posture in both the preference case and its broker, Aon. The first issue I'd like to focus on is the legal effect of ACER having paid its coverage counsel, Womble, in 2011. The leading authority on this issue is the California Supreme Court decision Jordache. Jordache held that when an insured incurs attorney's fees for its counsel to address a coverage issue that's raised by the insurer, those fees constitute damage to the insurance company. The insured attorney's fees were raised for purposes of a suit against the insurance agent for its failure to obtain adequate coverage, and those fees caused the statute of limitations to run. What about the fact that you didn't seek those fees? Not you personally. I bet you did not draft the complaint, but somebody at Smith-Amundson drafted the complaint and never sought that as part of the damages. So that will make no difference, and that does not allow the plaintiff to circumvent the statute of limitations. The Choi decision provides that a plaintiff cannot circumvent the statute of limitations by only alleging some of its damages in its complaint. Also, Jordache said that it's clear that the time that damage is deemed to occur is the time of the first damage. And it does not matter if there's a question of the total amount of damages that will be incurred in the future. By way of analogy, if there's a car accident case, the plaintiff can't wait more than two years after the accident to see what the full extent of their medical bills are going to be. Nor can they choose to only sue for the medical bills that they had incurred most recently after the two-year period. But rather, the statute runs from the date of the accident, and the plaintiff has to take action at that point if they want to pursue the claim. Now, regarding Jordache, Jordache held that when an insurer incurs fees to address a coverage issue that's raised by the insurer, those fees constitute damage and start the... So that, it's important to understand the distinction here on the types of fees involved. So we have on the one hand, there are defense fees, which are ordinarily incurred to defend the preference claim, which would have been necessary regardless of whether there was coverage or not. And there's also the separate issue of coverage fees, and that's time spent pursuing coverage from the insurer, which is a separate claim and requires a separate type of analysis. So Jordache did note this distinction between coverage fees and defense fees, so I do want to note that. Specifically, Jordache involved three different types of damage. Number one, the insured lost defense fees because the insured had to pay its own defense counsel to defend the underlying case. Second, they had to pay for coverage counsel to pursue coverage from the insurer, which eventually led to a settlement with the insurer. And third, they suffered an impaired settlement posture since the insurer was not willing to cover the underlying case. And Jordache made clear that each of these three items independently constituted damage that would trigger the statute of limitations. And actually, when Apple Valley and Third Eye Blind discussed Jordache, both those decisions listed out those three items as involving distinct categories of damage. So the problem with ACER's argument is that ACER only acknowledges that the insured in Jordache had incurred the first of those categories of damages, which was the fact that the insured in Jordache had to pay its own defense fees to defend the underlying case. But ACER ignores that Jordache also involved two independent types of damage, which were the coverage fees and the impaired settlement posture. Any three of these was enough to start the statute of limitations. Can you speak to the Lederman case and their reliance on it? Yes, Your Honor. So ACER's main case on appeal is Lederman. The court actually does not even have to pay attention to this case. It was actually a 2018 case that came into pass after the underlying complaint here was filed. They had cited one other 2018 case in their brief as well that we pointed out. So this did not show the state of the law at the time the underlying suit was filed. Has it changed? Well, counsel would not have had this whether decisions were relied on. Sure, but does the decision just merely reflect what the state of the law is? It didn't announce a new rule. It didn't purport to, at least. The decision did not claim it was changing the rule, but it does seem to be the main case that ACER is relying on. So that shows that perhaps it involved a different interpretation. But anyways, with Lederman, it's a very distinctive case. It's actually an accounting malpractice case. In Lederman, the insured sued its accountant for failing to obtain adequate coverage, and the defendant accountant not only failed to present any evidence that the insured had incurred any coverage counsel fees prior to the statutory period, but the plaintiff even rebutted the argument and presented affirmative evidence showing that no coverage counsel fees existed. Specifically, the attorney who had represented the insured in Lederman submitted a declaration stating that he did no work that he would not have done in every personal injury case. And even more importantly, that attorney stated that the issue of the amount of insurance coverage that was in place had no effect on the amount of work that the attorney did prior to the statute of limitations. Also, in Lederman, there was no dispute over coverage and no denial of coverage, but rather it was simply a matter of the limit of coverage being $1.5 million instead of $5 million. But as the insurance attorney in Lederman explained, the amount of the policy limit had no effect on the amount of work he did. So Lederman is very different from this case because here we have bills from coverage counsel in the record and ACER admits it paid those bills. Also, here we have a report drafted by coverage counsel showing that Womble provided coverage advice, evaluated the merits of a claim against Euler, provided advice on a future suit against Euler, and provided a recommendation for ACER to try to quickly settle with its insurer. And we can see from the interrogatory answers that ACER accepted that advice, negotiated further with ACER, and two weeks after getting the Womble report, ACER receives a better offer to settle with Euler. Now, none of that work would have been necessary if there had been coverage in place. So those fees constitute damage. So the shortcut terminology for what you're saying are the damages that triggered the statute are coverage counsel fees. When you engage coverage counsel as opposed to counsel to litigate the underlying case that you thought you had coverage for, where you'd go to coverage counsel to consult with you about the amount of coverage and the problems with the coverage, that's a recoverable damage against a broker. Is that your argument in a nutshell? Yes, Your Honor. This is the distinction, and this distinction was noted further in Saunders and Third Eye Blind. And not that we have to worry about policy necessarily in California, but is it problematic to you at all that in taking action which ACER took to mitigate the damages that AR had caused them, that that somehow triggered the litigation, triggered the statute of limitations? Is that troubling to you from a public policy standpoint at all? No, I don't believe there's any policy concerns there, and there are a couple considerations that ACER could have taken into mind in dealing with that situation. First, if ACER would have preferred to hold off on suing AON immediately because it wanted to see how much it would eventually incur in damages. Jordache says they cannot hold off. They have to file a suit at that point once they have damages. But as Jordache also held, if the insured wanted to they still needed to file the suit on time, but it could consider requesting a stay until the other matters resolved. Would it matter if instead of retaining outside coverage counsel, it was done in-house by an assistant general counsel? There would have been no fees incurred. Well, that is not the question we have today. I would say if they had to pay more for in-house counsel to do the work. No, the hypothetical is they don't. In-house counsel is in-house counsel. So you're actually worse off, dovetailing to this policy point, you're worse off for having retained an expert in coverage to give you an opinion What if you had just done it yourself? Well, the issue here is that it was reasonable for them to consult an expert. This was a large claim and they needed to do what they needed to do to protect their rights. This somewhat ties into the tort of another doctrine and that provides that when a plaintiff incurs attorney's fees in dealing with a third party, those fees constitute damage that can be claimed in a suit that the plaintiff brings against the tortfeasor that caused those damages to be incurred. So here, ACER incurred coverage counsel fees in its dealing with the third party insurer Euler, so those fees constitute damage for purposes of a claim against the tortfeasor Aon, who had allegedly failed to obtain adequate coverage and made those fees necessary. And the cases that illustrate the tort of another doctrine in this context are Third Eye Blind and Saunders, which found that coverage counsel fees that the insurer incurs in dealing with coverage issues constitute damages that can be claimed against the broker. Now, ACER had made the irrelevant argument that it could have chosen to waive its rights against Euler, but that's simply not what occurred and it would not have been reasonable for ACER to waive its claim because then it would have lost out on the large payment from Euler and it would have a significant mitigation of damages problem in the case against Aon. And as the gray case illustrates, which ACER relies on, the fact that an injured party chooses to pursue a claim against a third party constitutes damage for purposes of the tort of another doctrine, even though in one sense it can generally be argued that a plaintiff is often acting voluntarily when it chooses to pursue a claim because the plaintiff also has the option of waiving its rights against the third party and taking its chances or just giving up. But gray illustrates that the fact that it's the injured party who's choosing to pursue the claim against the third party rather than being involuntarily forced to defend against the third party suit does not change the fact that those are damages under the tort of another doctrine. Well, ACER is right, isn't it, that that doctrine is generally invoked in litigation context and there was not really, outside counsel didn't really engage in litigation here. They gave advice. They did not litigate against Well, I think it's important to note that the Saunders case did not involve a third party suit. There, the attorney was hired on a straightforward contingent fee to try to convince the insurer to pay its limit. And the decision states that these negotiations went very quickly. There was no suit. The attorney did not have to do that much work and they were able to get the full limit paid for the insured. But what's important to see here is that Saunders says that contingent fee constitutes damage that the insured can recover against its agent because the agent was failing to get more certain coverage and to avoid the realistic likelihood that insurers will raise defenses to coverage if there's an issue with the policy. Getting back to one of the other policy arguments I wanted to mention. So other than a stay, sometimes litigants also request tolling agreements to delay litigation. And what happened here was back when it was using a California attorney, ACER actually did try to delay the suit against AON even when it knew it had a statute of limitations problem. As ACER had its prior California counsel, ORC, asked for a tolling agreement back in 2013. But AON refused to sign the tolling agreement. Well, by your calculation, by then it was already too late. Yes, Your Honor. In either way, it shows that they clearly knew they had a problem. Also, an issue with their brief, ACER's reply had inaccurately stated that they should not have to litigate three different suits. But Jordache rejected that argument as Jordache involved three different sets of litigation. Number one, there was the underlining litigation. Number two, there was the coverage claim. And number three, there was the professional negligence claim against the agent. So ACER could have filed its Roe v. Malpractice case much sooner than it did. But by delaying and sitting on its rights, it lost the right to pursue the action. And another issue I'd like to talk about is the fact that ACER was damaged for the additional reason of having sustained an impaired settlement posture. And I'll certainly let you address that, but if we agree with you on the first one, there's no reason to necessarily reach that one. Is that correct? If we agree with you that the attorney's fees were damages, then there's no need to reach that second issue. Is that correct? I agree, Your Honor. Both categories of damage are in themselves enough to start the statute of limitations. However, the judge, as Rick did, fined both of them. And go ahead and address it if you want to. So on impaired settlement posture, the leading decision is Jordache, which found that where an insurer raises a coverage defense that affects the amount the insurer is willing to contribute to settle the underlying case, the insurer suffers the damage of having an impaired settlement posture. And ACER tried arguing that Euler might change its mind, but under Jordache and Apple Valley, the possibility that the existing harm might be mitigated or reversed does not twirl the statute of limitations. That feels so speculative, which is exactly what the California courts say damages can't be at that point. I don't understand why that's not too speculative. Well, Apple Valley made clear in that case they had an appeal ruling in an administrative case, and the court still found there was damage. The other impaired settlement posture cases are Village Nurseries and Sharon and Sheoxing. These all found that an impaired settlement posture was enough to start the statute of limitations. Then one final issue is I'd just like to briefly address that ACER notes that some of the cases we cited are legal malpractice cases. And we cited those because the same reasoning applies in broker malpractice scenarios just as it applies in legal malpractice scenarios, which are all types of professional negligence claims. And in fact, ACER impliedly recognized that legal malpractice cases apply because ACER cites Budd, which was a legal malpractice case, and ACER also relies on Lavera, which was an accounting malpractice case. Now, the most significant of the legal malpractice cases is Jordache, where the attorney was sued for failing to give notice of a claim to insurer, which is ordinarily something that only the broker would be doing. So Jordache is basically indistinguishable from a broker malpractice case. And a decision that came after Jordache, which was third-eye-blind, expanded upon Jordache and made very clear that the reasoning of Jordache applies to a broker malpractice claim. Now, if the Court has no further questions, I simply ask that summary judgment be affirmed. Thank you. Thank you, Your Honor. Mr. Connisey, your reply? Thank you. Every argument just raised is all covered in the 2018 case Letterer. Every single argument she just raised was addressed by the Court in 2018 in Letterer. And to say that it's an accounting malpractice, the statute 3391 applies to brokers, it applies to accountants. It is not the 460 or the 640, for some reason I'm getting those mixed up, that you find in the legal malpractice context. So we're dealing with 331. That's first. Second, each case, as the Court said in Budd, the Supreme Court said is unique. You have to address each case based on its uniqueness. There is nothing that could have been done. She's talking, one of the issues is the settlement posture hurt. The settlement posture being hurt on these facts of this case is an absolute question of fact that cannot be decided on a 21005. This dealt with complex issues under bankruptcy law. When payments are made within that 90-day window, the issue here, and it became because that the $27 million received came within, potentially within the 90-day, ACER was allowed to argue ordinary course of business, that nothing unusual happened when it received those, that $27 million. That would have been an absolute question of fact that could not have been decided except by a trial. They ended up settling. There is no evidence that there was a diminution or that the settlement was bad or anything like that. The fact is that the 90-day exposure here created the unique case. Second, letter addresses the investigation piece. Lederer specifically said, and there's no way and it's impossible to get around this fact that Lederer said, under relevant statutes and case law, a right to underinsured motorist coverage does not accrue, does not accrue until the insured has reached a settlement or judgment exhausting the underinsured motorist policy. Take out underinsured and put in indemnity because that's the exact same thing here. Under the law, you could say under relevant indemnity and case law, a right to obtain indemnity does not accrue until the insured has reached a settlement or judgment exhausting the, in this case, the underlying case, whether it's settled or there's a judgment. It's indistinguishable. And that very sentence, Justices, the appellate court in 2018 used to respond to whether the investigator fees caused damage, whether the amended complaint, and again, I can't emphasize, and it's not me, the trial court said and it addressed the issue that the complaint did not request attorney's fees or investigation costs as recoverable. She says, well, Choi said he can't do that. I've got a 2018 appellate court decision on the very issue of whether or not fees can be considered and investigation costs can be considered as damages on the very same issue here under 339 that says you can look to the complaint. And that's the analysis. Letterer's the roadmap. The last part, she says, okay, I already addressed the settlement posture. Last thing, the tort of another. They cited this grade and I thought it was interesting. There is absolutely no changing the language from case to case to case. The tort of another doctrine says if you are required, that you are required to defend or prosecute. In this case, Acer was required to do neither until there was a settlement or judgment. So the tort of another doctrine doesn't save them either. Gray flipped it on its head. The defendant in Gray tried to use it as a sword and the court said no, no, no, you can't do that. Choi doesn't help. And lastly, the Saunders case is exactly my point. Saunders did not address the issue of indemnity. It was a CGL policy. You have to look at the unique facts of this case. And Acer could do nothing until there was a settlement for judgment. So any of the fees incurred under the letterer case, the cause of the settlement was either a big D or a little d, because you couldn't have the big d. And the little d was addressed here at letterer. So I appreciate your time. Good to get the no California law. We can all do that now. We can all pass the bar now. Illinois lawyers teaching Illinois judges no California law. Thank you very much. Okay, the matter will be taken under advisements. And with that the court will be in a brief recess until our next case at law.